**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF IOWA**

| | | |
|---|---|---|
| Ocorian Services Bermuda Limited, | ) | |
| as Trustee of Lexington Trust 100603, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. _____ |
| v. | ) | |
| | ) | |
| Transamerica Life Insurance Company | ) | |
| | ) | |
| Defendant. | ) | |

**COMPLAINT**

Ocorian Services Bermuda Limited ("Plaintiff"), as Trustee of Lexington

Trust 100603 ("Lexington Trust") states as follows for its Complaint against

Transamerica Life Insurance Company ("Defendant" or "Transamerica"):

**Nature of the Action**

1.      This case concerns a life insurance policy with a $1.2 million face

value that Transamerica issued, and for which it collected hundreds of

thousands of dollars in premiums, and subsequently deemed "lapsed" after

failing to send the policy owner information regarding amounts due on the

policy, a notice of payment, and a grace period notice, in violation of the terms

of the policy.  As set forth below, under the plain language of the policy and

applicable regulations, Transamerica is required to send a notice of premium

due and provide a grace period of sixty-two days prior to deeming the policy

lapsed.  Transamerica also has an obligation to provide the policy owner with

information about the policy upon request.  Transamerica, however, sent the

policy owner conflicting information regarding amounts due on the policy and

1

failed to send the required grace period notice. The policy owner inquired multiple times on the amounts due on the policy and Transamerica ignored the requests for information. Transamerica subsequently deemed the policy lapsed, and pocketed hundreds of thousands of dollars in premiums paid to date. Significantly, Transamerica has a history of mismanaging the administration of this policy by sending untimely notices, annual statements showing conflicting values, and notices to incorrect addresses. In fact, prior to the current wrongful lapse of the policy, Transamerica had previously improperly deemed the policy lapsed, but the policy owner with the assistance of counsel managed to have the policy reactivated. Plaintiff now brings this action for a declaratory judgment that the Policy remains in full force and effect in order to remedy Transamerica's wrongful lapse.

**The Parties**

2. Plaintiff Ocorian Services Bermuda Limited ("Plaintiff") is the trustee for Lexington Trust 100603. Plaintiff is organized under the laws of Bermuda.

3. Lexington Trust 100603 ("Lexington Trust") is a trust created under the laws of Bermuda. Lexington Trust is the owner and the beneficiary of life insurance policy number 92341887 (the "Policy") issued by Defendant Transamerica Life Insurance Company.

4. Defendant Transamerica Life Insurance Company ("Defendant" or "Transamerica") is a life insurance company organized under Iowa law, with its

2

principal place of business located at 4333 Edgewood Road NE, Cedar Rapids, Iowa.

**Jurisdiction and Venue**

5.    This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332(a) and (c) because Plaintiff and Defendant are citizens of different states.  The matter in controversy exceeds the sum or value of $75,000.00, exclusive of interests and costs.

6.    This Court also has jurisdiction over Plaintiff's declaratory judgment action pursuant to Fed. R. Civ. P. 57 and 28 U.S.C. § 2201 and 2202, which grant the district courts jurisdiction to declare the "rights and other legal relations of any interested party making such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201.

7.    Personal jurisdiction exists over Defendant because Defendant conducts business in the State of Iowa or alternatively, engaged in business transactions alleged herein from which the present causes of action arise, in the State of Iowa.

8.    Venue is proper pursuant to 28 U.S.C. § 1391(a)-(c) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred within the District and Defendant is an entity with the capacity to sue and be sued in its common name under applicable law and is subject to this Court's personal jurisdiction with respect to this action.

3

**Facts**

9. Lexington Trust is the owner and the beneficiary of life insurance policy number 92341887 (the "Policy") issued by Transamerica.

10. On December 10, 1990, Transamerica Occidental Life Insurance Company ("Transamerica Occidental") issued a life insurance policy to Samuel Turillo and Patricia Turillo (collectively "the insureds"), Policy No. 92341887 (the "Policy") with a face value of $1.2 million. A copy of the Policy is attached as **Exhibit 1** and is incorporated by reference.

11. At the time the Policy was issued, the insureds were residents of the State of Pennsylvania.

12. On or about October 1, 2008, Transamerica Occidental was merged into Transamerica Life Insurance Company, making Transamerica Life Insurance Company its successor-in-interest.

13. On or about January 9, 2015, Lexington Trust purchased the Policy for $310,000.00 from its then-owners.

14. On or about March 4, 2017, Samuel Turillo, one of the insured, passed away in Pennsylvania.

15. On information and belief, Patricia Turillo, the other insured, is still alive.

16. The Policy is a universal life insurance policy. In a universal life insurance policy, the policy owner deposits premium payments, which are variable, into an accumulation account, from which the life insurance company withdraws the monthly cost of insurance and expense charges. The

4

accumulation account is credited with monthly interest at a nonguaranteed declared rate, but not less than the guaranteed interest rate stated in the policy. Interest accrues on the account balance based upon minimum rates and average annual rates guaranteed by the policy.

17. Universal life insurance policies, including the Policy, allow the policy owner to change the amount and the frequency of the premium payments as long as the accumulation accounts contain sufficient cash value to cover the monthly deduction charges.

18. The Policy carries a guaranteed annual interest accumulation rate of 5.5%, which is a rate that is far in excess of the typical interest rates for life insurance policies.

19. The Policy refers to the Cost of Insurance ("COI") charge. COI is a fee associated with universal life insurance. Different from premiums, COI charges are billed to pay for administration and other responsibilities of the insurer.[1]

20. Transamerica deducts the COI charge from the accumulation account of the Policy, so the policy owner forfeits the COI charge entirely to Transamerica.

21. Under the Policy, Transamerica is required to "send any notice under the provisions of the [Policy] to [the Policy owner's] last known address and to any assignee of record." **Exhibit 1** at p. 3.

_____

[1] The COI is largely determined by the age and risk class of the insured. COI charges tend to increase as the insured gets older because, as the insured ages, the more likely (s)he is to die and thus require the insurer to pay out the death benefit on the policy.

5

22.     Pursuant to the Policy, Transamerica "will use the Policy Date shown in the policy data to determine the monthly dates, policy anniversaries and policy years." **Exhibit 1** at p. 3.  The anniversary date on the Policy is in December of each year.

23.     Under the Policy, Transamerica is required to "accept any amount [the Policy owner] sends [Transamerica] as a premium payment while this [P]olicy is in force" and the Policy owner "may pay premiums at any time, but only if the amount of each premium is at least $25." **Exhibit 1** at p. 6.

24.     Pursuant to the Policy, Transamerica "will not refund any amount if doing so would cause [the] Policy to lapse before the next anniversary." **Exhibit 1** at p. 6.

25.     Transamerica has an obligation to notify the policy owner that a grace period has begun and is to specify the premium amount due and due date to be met to continue to maintain the Policy in force upon expiration of a grace period.  The Policy states:

> Grace Period – A grace period is a period of 31 days after (a) a monthly date when the accumulation value minus any loan is less than the monthly deduction due, or (b) a policy anniversary on which the cumulative minimum required premiums have not been paid during the first 5 policy years. (See Premiums provision number 2)  We will notify you that the grace period has begun and that you must pay a premium large enough to keep the policy in force before the 31 days are up.  If you do not pay enough premium, and there is no net cash value, your policy will lapse.  If there is any net cash value remaining at the end of the grace period, we will treat it as a Full Surrender.

> Since a monthly deduction is made on each monthly date for the prior month, and a nominal 31-day grace period is provided after that monthly date, **there will always be at least a 62-day effective grace period for payment of overdue premiums**.

6

**Exhibit 1** at pp. 6-7.

26.     The Policy further provides:

> At least once a year, we will send you a statement showing the face amount, accumulation value, cash value, loans, partial surrenders, premiums paid and charges as of the statement date.  Upon written request at any time, we will send, at a reasonable charge, an illustration of benefits and values.

**Exhibit 1** at p. 12.

27.     The Policy defines "lapse" as "termination of the policy due to insufficient premium or accumulation value." **Exhibit 1** at p. 3

**Defendant's history of mismanaging the administration of the Policy**

28.     On or about May 6, 2015, Lexington Trust submitted to Transamerica a Transfer of Ownership Request Form naming Lexington Trust as the owner of the Policy and listing the address for Lexington Trust as c/o Insurance Advisors & Administrators, Inc., at PO Box 2077, Miami, Florida, 33283.[2] **Exhibit 2.**

29.     On or about May 6, 2015, Lexington Trust submitted to Transamerica a Beneficiary Change Form, naming Lexington Trust as the primary beneficiary on the Policy.  **Exhibit 3.**  Lexington Trust listed as its address, PO Box 2077, Miami, Florida, 33283.  *Id.*

30.     Thus, as of May of 2015, Transamerica had in its records Lexington Trust as the Policy owner and beneficiary and the correct address for Lexington Trust.

---

[2] The Transfer of Ownership Request Form named Appleby Services Bermuda, Ltd. ("Appleby") as the trustee.  Appleby Services became Estera Services Bermuda Limited in 2016 and subsequently merged with Ocorian Services Bermuda Limited.

7

31.     On or about November 10, 2016, Transamerica issued a Notice of Payment Due and sent it to Lexington Trust at an address in care of Appleby at Canons Court, 22 Victoria Street, in Hamilton Bermuda.  **Exhibit 4.**

32.     This address is not Lexington Trust's mailing address and was not specified by Lexington Trust as a mailing address for Transamerica to use in communications.  As a result, Lexington Trust did not receive the notice.

33.     On or about January 9, 2017, Transamerica sent a lapse notice to Lexington Trust, in care of Appleby at Canons Court, 22 Victoria Street, in Hamilton Bermuda ("January 2017 Lapse Notice").  **Exhibit 5.**  The lapse notice stated, "[r]ecently we notified you that additional premium was needed to prevent this policy from lapsing.  When the premium was not paid, the life insurance coverage under this policy lapsed at the end of the grace period." *Id.*

34.     Lexington Trust did not receive the January 2017 Lapse Notice because Transamerica sent it to the wrong address.

35.     When Lexington Trust learned that Transamerica had wrongly lapsed the Policy, it retained counsel and was able to have the Policy reactivated without litigation, via multiple demand letters.

36.     On or about April 24, 2017, Transamerica sent a letter to Lexington Trust at its correct address stating:

> We have elected to make a onetime offer to waive underwriting requirements for the pending reinstatement request.  Before we can complete this process, we will need the following requirements:
>
> A payment of $53,647.64. This amount represents a premium payment of $46,175.16 and $7.472.48 to be applied to the policy loan.

8

The requested payment is due by May 24, 2017. After reinstatement, scheduled billing will resume for August.

**Exhibit 6.**

37.    Lexington Trust promptly submitted the requested payment to Transamerica which was received Transamerica by May 24, 2017.

38.    On June 9, 2017, Transamerica sent a notice to Lexington Trust informing it that the Policy was reinstated.  **Exhibit 7.**

39.    Defendant's practice of mismanaging its administration of the Policy, however, continued.

**Transamerica issued conflicting information to Lexington regarding net cash value and monthly deduction amounts**

40.    Transamerica sent Lexington Trust two conflicting Statements of Policy Values for the time period of December 10, 2015 through December 10, 2016.

41.    Transamerica sent Lexington Trust a Statement of Policy Value dated December 12, 2016 for the statement period of December 10, 2015 through December 10, 2016 ("December 2016 Statement").  **Exhibit 8**.

42.    The December 2016 Statement stated that (a) the ending gross accumulation value of the Policy the end of the relevant Policy period equaled $84,366.33; (b) the cash value of the Policy at the end of the relevant Policy period was $84,366.33; (c) the Policy loan balance at the end of the relevant Policy period was $101,256.93; and (d) the net cash value of the Policy at the end of the relevant Policy period was $16,890.60. **Exhibit 8** at p. 1.

9

43.     The December 2016 Statement specified, "[t]the monthly insurance deduction for the new policy year [the Policy year commencing December 10, 2016 and continuing through December 10, 2017], is $5,574.66." **Exhibit 8** at p. 5.

44.     Transamerica also sent Lexington Trust a Statement of Policy Value dated June 9, 2017 for the same statement period of December 10, 2015 through December 10, 2016 ("June 2017 Statement"). **Exhibit 9**.

45.     The June 2017 Statement stated that (a) the ending gross accumulation value of the Policy the end of the relevant Policy period equaled $129,625.46; (b) the cash value of the Policy at the end of the relevant Policy period was $129,625.46; (c) the Policy loan balance at the end of the relevant Policy period was $93,184.76; (d) the net cash value of the Policy at the end of the relevant Policy period was $33,440.72. **Exhibit 9** at p. 1.

46.     The June 2017 Statement specified, "[t]the monthly insurance deduction for the new policy year [the Policy year commencing December 10, 2016 and continuing through December 10, 2017], is $0.00." **Exhibit 9** at p. 4.

47.     These statements contain different net cash value and monthly deduction amounts, even though each statement specifies that it is for the same Policy period of December 10, 2015 through December 10, 2016.

**Defendants deem the Policy lapsed without sending Plaintiff the required notices**

48.     After Transamerica reinstated the Policy in June of 2017, Transamerica failed to send Lexington Trust premium notices.

10

49.     Because Lexington Trust did not receive any premium notices in 2017 and the Statement of Policy Values dated December 2016 and June 2017 contained different amounts, and the June 2017 Statement indicated no insurance payments were due through December of 2017, Lexington Trust did not know what amounts, if any, to pay on the Policy.

50.     Because Transamerica failed to send premium notices to Lexington Trust in 2017 and sent conflicting Statement of Policy Values—including the June 2017 Statement which indicated no insurance payments were due through December of 2017—Lexington Trust did not know if its accumulation account, from which the monthly COI charges are deducted, contained sufficient cash value.

51.     Accordingly, on or about June 23, 2017, Lexington Trust contacted Transamerica to request that Transamerica provide it with the most recent annual statement, COI information, and paid-to-date information concerning the Policy ("Lexington Trust's June 2017 Information Request").  **Exhibit 10**.

52.     Transamerica  failed to respond to Lexington Trust's June 2017 Information Request.

53.     On or about September 5, 2017, Lexington Trust sent to Transamerica a check for premium payments in the amount of $11,400.00.

54.     Lexington Trust sent to Transamerica a premium payment in the amount of $11,400.00 due to Transamerica's failure to respond to its information requests, desperately hoping that Transamerica would provide

11

Lexington Trust with information concerning the Policy if it submitted a payment.

55.    On or about September 13, 2017, Transamerica sent a letter to Lexington Trust informing it that the Policy was scheduled to lapse between August 25, 2017 and September 25, 2017 ("Transamerica's September 2017 letter"). The letter stated:

> You may have received a grace period notice and/or termination letter. However, because of recent severe weather in Florida and the resulting hardships, we have extended the grace period on your policy until November 6, 2017. We must receive outstanding premium payments before this date for your policy to remain in effect.

**Exhibit 11**.

56.    Lexington Trust did not receive Transamerica's September 2017 letter until September 29, 2017—after the purported lapse date.

57.    On September 26, 2017, Lexington Trust again wrote Transamerica to request information on the Policy (Lexington's September 2017 Information Request").  Lexington's September 2017 Information Request stated, "coverage on this policy was reinstated on June 9, 2017 and we have yet to receive premium notices, copy of last Annual Statement or information as to the current [cost of insurance], as requested via email on June 23, 2017."

**Exhibit 12**.

58.    Transamerica also failed to respond to Lexington Trust's September 2017 Information Request.

12

59.     On September 29, 2017, Lexington Trust received "Transamerica's September 2017 letter" and promptly sent to Transamerica another check for premium payments in the amount of $11,400.00.

60.     On or about November 10, 2017, Lexington Trust's check in the amount of $11,400.00 for premium payments arrived at Transamerica.

61.     On or about December 11, 2017, Transamerica sent to Lexington Trust a check in the amount $11,400.00. **Exhibit 13.** Transamerica provided no explanation accompanying the refund check beyond "refund back to payer." *Id.*

62.     Upon receiving the refund check, Lexington Trust wrote to Transamerica to inquire why Transamerica had refunded Lexington Trust's payment of $11,400.00. Lexington Trust's letter stated, "[b]ased on two conflicting Annual Statements received from you, after our request dated June 23, 2017, reflecting values as of December 10, 2016, **we have requested current COI charges applicable to 2017 policy year to help us determine policy charges**. This information has yet to be provided." **Exhibit 14**. The letter also informed Transamerica that no premium notices nor grace letter were received during the entire year of 2017 and that a premium payment was made before the extended period prompted by the severe weather in Florida.[3] *Id.*

63.     On January 17, 2018, Transamerica sent a letter to Lexington Trust informing it the Policy had lapsed, stating:

> An accommodation offer was made to reinstate the policy without underwriting **requirements due to the original billing notices not being**

---

[3] Transamerica did not respond to this letter until February 1, 2018.

**properly mailed** [. . .] The funds needed to bring the Policy current were needed by November 30, 2017. Since the full amount of the funds needed were not received by November 30, 2017, both payments of $11,400 that we had received were refunded after the standard holding period. In order for us to consider reinstatement of this policy, the enclosed reinstatement application must be completed. Additional evidence of insurability may be required.

**Exhibit 15**.

64.     Thus, Transamerica deemed the Policy lapsed without timely sending Lexington Trust the required grace period notice.

65.     Significantly, Transamerica deemed the Policy lapsed even though it received two separate premium payments in the amount of $11,400.00, for a total of $22,800.00, before November 30, 2017.

66.     Upon receiving this letter, Lexington Trust requested to make all payments due and owing on the Policy. Transamerica refused to unconditionally accept payment and to place the Policy in active status.

67.     On February 1, 2018, Lexington received a letter from Transamerica that, on information and belief, Transamerica backdated to October 31, 2017, informing Lexington Trust that funds needed to bring the Policy current were due by November 30, 2017. The letter stated:

> We are responding in regards to the recent inquiry regarding your policy. We have elected to make a one-time offer to waive underwriting requirements for the pending reinstatement request. Before we can complete this process, we will need the following premium requirements: a payment of $30,402.02. This amount represents a premium payment of $28,682.82 and $1719.20 to be applied to the policy loan. We are currently holding $11,400. This leaves a balance due of $19,002.02. This requested payment is due by November 30, 2017. After reinstatement, scheduled billing will resume for January 2018.

**Exhibit 16**.

68. Lexington Trust has attempted to resolve with Defendant the wrongful lapse of the Policy, to no avail.

69. To this day, Lexington Trust does not know the amounts due on the Policy as Transamerica has refused to provide this information.

70. Defendant cannot lapse the Policy because

   a. It failed to send a timely notice to Lexington Trust warning Lexington Trust that a Policy payment was due;

   b. it failed to send a timely grace period notice to Lexington Trust warning Lexington Trust that the Policy was set to lapse;

   c. it refunded Lexington Trust's two premium payments in the amounts of $11,400.00 (for a total of $22,800), causing the Policy to lapse before the next anniversary, in violation of the terms of the Policy;

   d. it refused to provide Lexington Trust with information from which Lexington Trust could determine Policy charges and amounts due on the Policy, despite Lexington Trust's multiple requests, and in violation of the terms of the Policy;

   e. the June 2017 Statement that the net cash value as of the end date of the relevant Policy period equaled $36,440.72 and specified, "[t]the monthly insurance deduction for the new policy year [the Policy year commencing December 10, 2016 and continuing through December 10, 2017], is $0.00." **Exhibit 9**. Accepting Transamerica's representations in the June 2017

Statement as true, the net cash value reported by Transamerica in the June 2017 Statement was more than sufficient to carry the Policy through the end of the Policy year, rather than lapse.

71. Lexington Trust is now entitled to a declaration that the Policy is in full force and effect and to a declaration requiring Defendant to restore the Policy without any lapse in coverage.

72. Lexington Trust is willing and able to make all premium payments due and owing on the Policy.

73. No claim has been made under the Policy as one of the insureds is alive.

74. Significantly, Transamerica has a history of deceptive behavior with respect to its universal life insurance policies. On March 29, 2019, a class action complaint was filed in this Court against Transamerica as a result of its practice of unilaterally and drastically increasing monthly deductions withdraw from its universal life insurance policies accumulation accounts, falsely stating the increases were permitted by the terms of the universal life insurance policies, in an attempt to cause the policies to lapse. This action was titled *Fairlie v. Transamerica Life Insurance Company et. al.*, Case No. 18-cv-32-LTS, in the U.S. District Court for the Northern District of Iowa. The *Fairlie* class action was settled along with a separate class action filed against Transamerica arising from the same deceptive practices with respect to its universal life insurance policies, *Feller v Transamerica Life Insurance Company*, Case No. 16-1378, in the Central District of California. Despite having to pay

out substantial settlements to the class members, Transamerica's deceptive practices have continued.

**Count I – Declaratory Judgment of Wrongful Lapse, Insurance Coverage, and that the Policy is in full force and effective**

75. Plaintiff re-alleges and incorporates by reference Paragraphs 1-74 as though fully stated herein.

76. A case and substantial controversy exists between the parties with adverse legal interests of sufficient immediacy and reality to warrant declaratory relief.

77. Defendant maintains that the Policy lapsed.

78. The Policy is a valid and enforceable contract between Transamerica and Lexington Trust as the Owner of the Policy.

79. Under the Policy, Transamerica is required to send any notice under the provisions of the Policy to the Policy owner's last known address and to any assignee of record

80. The terms of the Policy required Defendant to provide notice to the Policy owners when a policy entered a grace period.

81. The terms of the Policy precluded Defendant from deeming the Policy lapsed prior to the expiration of a sixty-two (62) day grace period.

82. Under the Policy, Transamerica is required to send Lexington Trust a statement showing the face amount, accumulation value, cash value, loans, partial surrenders, premiums paid and charges as of the statement date, upon written request by Lexington Trust.

17

83.     Pursuant to the Policy, Transamerica is prohibited from refunding any amounts paid by Lexington if doing so would cause the Policy to lapse before the next anniversary.

84.     Defendant breached the terms of the Policy and applicable law, when it failed to provide notice to Lexington Trust that the Policy had entered a grace period and that the Policy was set to lapse.

85.     Defendant breached the terms of the Policy when it failed to provide to Lexington Trust information regarding the face amount, accumulation value, cash value, loans, partial surrenders, premiums paid and charges as of the statement date, upon multiple written requests by Lexington Trust.

86.     Defendant breached the terms of the Policy when it refunded Lexington Trust's two premium payments in the amount of $11,400.00 (for a total of $22,800.00), causing the Policy to lapse before its next anniversary.

87.     Defendant breached the terms of the Policy when it deemed the Policy lapsed even though the net cash value reported by Transamerica in the June 2017 Statement was more than sufficient to carry the Policy through the end of the Policy year.

88.     Defendant's failure to send the grace period notice within the time frame allowed by the Policy and applicable law voids the warning and the lapse.

89.     Defendant's failure to send the grace period notice within the time frames prescribed by the Policy renders the Policy lapse void.

90.     Defendant's failure to provide Lexington Trust with information regarding amounts due on the Policy, renders the lapse void.

91.     Under applicable law, for any notice of cancellation, nonrenewal or termination by an insurer to be effective, an insurer must, within the time frame established by law, or such reasonable time in advance and as governed by contract, deliver the notice to the person to whom notice is required to be provided either in person or by mail through the U.S. Postal Service to the last-known address of the person to whom notice is required to be provided.

92.     Defendant's failure to deliver the notice of cancellation or termination to Lexington Trust within the time frame established by law and the Policy, renders the Policy lapse void.

93.     At all relevant times, Plaintiff and Lexington Trust have performed all obligations and conditions precedent under the Policy.

94.     Accordingly, Plaintiff needs and requests a declaratory judgment under 28 U.S.C. § 2201 *et. seq.* to clarify their rights and Defendant's obligations under the Policy.    Specifically, Plaintiff seeks a declaratory judgment that Defendant prospectively treat the Policy as remaining in full force and effect.

19

**Prayer for Relief**

WHEREFORE, Plaintiffs respectfully requests the following relief:

a. Judgment in Plaintiff's favor and against Defendant;

b. Judgment declaring that Defendant breached the terms of the Policy;

c. Judgment declaring that the Policy is in full force and effect;

d. Judgment requiring Defendant to restore the Policy without any lapse in coverage;

e. Judgment requiring Defendant to provide an accounting of the accumulation account, premium payments, and Cost of Insurance, associated with the Policy;

f. Judgment requiring Defendant to pay costs and attorneys' fees for this action; and

g. Such further relief as the Court deems just and proper.

**Count II – Breach of the Implied Covenant of Good Faith and Fair Dealing**

95. Plaintiff re-alleges and incorporates by reference Paragraphs 1-74 as though fully stated herein.

96. The Policy is a valid and enforceable contract between Transamerica and Lexington Trust as the Owner of the Policy.

97. Implied in the Policy is a contractual covenant of good faith and fair dealing pursuant to which Transamerica owed Lexington Trust a duty to act in good faith and deal fairly, and in a manner that did not frustrate its reasonable expectations under the Policy.

20

98.     Transamerica exercised its discretion under the Policy in bad faith, breaching the implied duty of good faith and fair dealing by:

      a.  failing to provide notice to Lexington Trust that the Policy had entered a grace period;

      b.  refusing to provide to Lexington Trust information regarding the face amount, accumulation value, cash value, loans, partial surrenders, premiums paid and charges as of the statement date, despite multiple written requests by Lexington Trust;

      c.  refunding Lexington Trust's two premium payments in the amount of $11,400.00 (for a total of $22,800.00), causing the Policy to lapse before its next anniversary;

      d.  providing Lexington Trust two different statements of policy values covering the same time period of December 10, 2015 through December 10, 2016 which contained conflicting information, and refusing to explain to Lexington Trust the reason for the discrepancies; and

      e.  deeming the Policy lapsed even though the net cash value reported by Transamerica in the June 2017 Statement was more than sufficient to carry the Policy through the end of the Policy year.

99.     Transamerica's breach of the covenant of good faith and fair dealing has proximately caused damage to Plaintiff and Lexington Trust in an amount to be determined at trial.

100.  At all relevant times, Plaintiff and Lexington Trust have performed all obligations and conditions precedent under the Policy.

**Prayer for Relief**

WHEREFORE, Plaintiff respectfully requests the following relief

a.  Judgment in Plaintiff's favor and against Defendant in an amount to be determined at trial in excess of $75,000.00 plus prejudgment interest, costs, and attorneys' fees;

b.  Judgment requiring Defendant to provide an accounting of the accumulation account, premium payments, and Cost of Insurance, associated with the Policy; and

c.  Such further relief as the Court deems just and proper.

**Demand for Jury Trial**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands a jury on all issues so triable.

Respectfully submitted,

STUART TINLEY LAW FIRM, LLP

Dated: November 2, 2020

*/s/ Robert Livingston*
Robert M. Livingston
Stuart Tinley Law Firm, LLP
310 West Kanesville Blvd.
Second Floor
Council Bluffs, IA 51503
Tel: 712-322-4033
Fax: 712-322-6243
rml@stuarttinley.com
Attorneys for Plaintiff


PATTERSON LAW FIRM, LLC

*/s/ Thomas Patterson*
Thomas E. Patterson
Stephanie Simpson Mathless
Patterson Law Firm, LLC
200 W. Monroe Street
Suite 2025
Chicago, IL 60606
Tel: 312-223-1699
Fax: 312-223-8549
tpatterson@pattersonlawfirm.com
ssimpson@pattersonlawfirm.com
Attorneys for Plaintiff
(*Pro Hac Vice* Application Pending)

23